**In re Kinder Allen ELIJAH and Maude Eulalia Elijah, Debtors.**

**Bankruptcy No. 82–03082–S–11.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

Aug. 6, 1984.

Max W. Lilley, Springfield, Mo., for creditors Moss.

James E. Miller, Springfield, Mo., for Kentland Bank.

Thomas J. Carlson, Springfield, Mo., for creditor Smith.

Fred Charles Moon, Springfield, Mo., for West Plains Bank.

### MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Debtors, who are an elderly farm couple, purchased two tracts of land totalling 2,624 acres in Wright and Howell Counties in Missouri. They traded some Indiana land for part of the price and made substantial cash payments. Five creditors, Federal Land Bank, West Plains Bank, Sherman Smith, Kentland Bank and Donald and Eileen Moss took deeds of trust in various portions of the property. After a downturn in the farm economy, debtors filed for bankruptcy in 1982.

In their plan they propose to surrender part of the property to the creditors to satisfy their secured positions in full. Debtors assert that these creditors are oversecured and that the proposal leaves them unimpaired. The creditors contest this characterization and contend that they can only be paid by surrender of all of their collateral. The Court heard argument and briefs were filed on the issues raised by the plan. The issues were submitted to the Court on the assumption that all of the creditors were oversecured but no evidence was produced by any party on that assumption and there would probably be some dispute as to valuation.

### I

Debtors assert that because creditors are paid in full by surrender of collateral that they are not impaired within the meaning of the Code. Creditors disagree. Resolution of the question is important as unimpaired creditors are deemed to accept the plan, Section 1126(f) of the Code, and may not be able to vote against confirmation. 5 Collier on Bankruptcy ¶ 1126.06 (15th Ed.). But see *Marston Enterprises, Inc.*, 13 B.R. 514, 7 B.C.D. 1403 (BC ED NY 1981). Compare *In re Masnorth Corp.*, 28 B.R. 892 (BC ND Ga.1983).

Section 1124 of the Code, Title 11, U.S.C., defines impairment, providing that:

"a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default, other than a default of a kind specified in section 365(b)(2) of this title, that occurred before or after the commencement of the case under this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(3) provides that, on the effective date of the plan, the holder of such claim or interest received, on account of such claim or interest, cash equal to—

(A) with respect to a claim, the allowed amount of such claim; or

(B) with respect to an interest, if applicable, the greater of—

(i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; and

(ii) any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder".

The debts owed to these secured creditors call for periodic payments in cash with interest. Alternatively the instruments of debt permit the creditor to foreclose and repossess the collateral. The plan does not propose cash payments; rather, it proposes surrender of some of the collateral. In fact, in one instance, it proposes that the creditor exchange collateral in which he holds an interest for an interest in other property to be surrendered. The plan does propose to cure any defaults by payment of the amount of the claim with interest, but *not* in cash. Any defaults are to be cured by surrender of a portion of the collateral.

Debtors advance the notion that payment in full to a creditor, however such payment is accomplished, causes such a creditor to be unimpaired. Such an argument is not a fair reading of Section 1124. First the statute provides that a creditor is unimpaired if its "legal, equitable and contractual rights" are unaltered. A plan which neither pays the debt as required by the debt instrument nor surrenders all the collateral does alter rights. The wording is clear. Alteration is synonymous with impairment. See, for example, *In re Madison Hotel Associates*, 29 B.R. 1003 (DC WD Wis.1983).

■ There is an exception to this broad reading. Under Section 1124(2), the debtor may cure a default by de-accelerating a mortgage, provided other creditor rights are unaltered. *In re Taddeo*, 685 F.2d 24 (2d Cir.1982). But any other change in the arrangement between debtor and creditor constitutes impairment. *In re Otero Mills, Inc.*, 31 B.R. 185 (BC N.M.1983); *In re Barrington Oaks General Partnership*, 15 B.R. 952 (BC Utah 1981).

In *Otero Mills*, supra, debtor proposed to pay a creditor upon sale of the collateral. The Court held that the shift in payments from monthly installments to a lump sum payment sometime in the future was an alteration of the creditors' contractual rights and impaired its status. In *Barrington Oaks*, supra, the debtor proposed to sell the property to a third party which would assume the obligation (a non-recourse secured note) to the creditor. The Court held that substitution of debtors constituted an impairment under Section 1124.

These provisions concerning impairment result from experience under Section 107 of Chapter X of the Bankruptcy Act, Section 507, Title 11, U.S.C. That section provided in part that creditors "shall be deemed to be 'affected' by a plan only if their ... interest shall be materially and adversely affected thereby". Where a plan did not disturb the position of an oversecured cred-

itor, such a creditor was not materially and adversely affected. *Central States Life Ins. Co. v. Koplar Co.*, 85 F.2d 181 (8th Cir.1936). See also 5 Collier on Bankruptcy ¶ 1124.01 (15th Ed.).

A reading of the language of Section 1124 suggests that impairment is no longer limited to material and adverse effects. The legislative history is in disagreement as to whether this approach is a mere continuation of the prior analysis, Senate Report No. 95–989, 95th Cong., 2d Sess. 120 (1978), or is new, House Report No. 95–595, 95th Cong., 1st Sess. 408 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Collier suggests that the difference is more apparent than real. 5 Collier on Bankruptcy ¶ 1124.02 (15th Ed.).

 But when balanced against the right to vote on confirmation, it is not difficult to conclude that Section 1124 is to be read broadly. When the relationship to the debtor is changed, the creditor ought to have the right to express a formal opinion about the change. 5 Collier on Bankruptcy ¶ 1124.03, 1125.06, 1129.02[8] (15th Ed.); *In re Madison Hotel Associates,* supra. The Court concludes, therefore, that the limitations expressed in Section 1124 should be read liberally to effectuate the purposes of the Code, encouraging creditors to be involved actively in the reorganization process. The Court holds that these creditors are impaired under the plan proposed by debtors and are eligible to vote on confirmation.

## II

Some but not all of these secured creditors have made election to have their claims treated as fully secured under Section 1111(b) of the Code. They argue that this election prevents the debtor from returning less than all of the collateral in which they hold an interest in satisfaction of their respective claims.

 If an election under § 1111(b) is made "then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed".

The purpose of the election is to avoid the splitting of an undersecured creditor's claim into secured and unsecured portions, and to prevent the debtor from depriving the creditor of the benefit of appreciation in value of the asset over time. *Matter of Pine Gate Associates, Ltd.*, 2 B.C.D. 1478 (BC ND Ga.1976); 5 Collier on Bankruptcy ¶ 1111.02 (15th Ed.); *In re Griffiths*, 27 B.R. 873, 10 B.C.D. 173 (BC Kan.1983); Stein Section 1111(b); Providing Undersecured Creditors with Postpetition Appreciation, 56 Am.Bankr.L.J. 195 (1982); Pusateri, Section 1111(b) of the Bankruptcy Code, 58 Am.Bankr.L.J. 129 (1984).

In *Griffiths,* supra, the Court held that a debtor could not cash out an undersecured electing creditor by returning part of the collateral in which the creditor held an interest and paying the remaining value of the collateral in full satisfaction of the claim. It follows from that analysis that a debtor could return part of the collateral which value fully satisfied the claim. It also follows that a debtor could return part of the collateral and pay the balance of the claim in cash.

Here the creditors are assumed to be oversecured for purposes of this analysis. The debtor could return part of the collateral and pay creditors in full. What value is the election then? Obviously it cannot have the expected effect of preventing the creditor's claim from being divided into secured and unsecured portions. It does preserve the creditor's interest in the collateral. By surrendering collateral in kind rather than selling it and distributing the proceeds the debtor necessarily, no matter how sophisticated and voluminous the appraisals, makes a guess as to value. If the creditor sells the surrendered collateral and the sale price is less than the claim, the impact of the election is that the creditor could require the debtor to surrender more collateral or to pay the balance of the claim as secured. The election avoids the deficiency. Compare *In re Fursman Ranch,* 38 B.R. 907, 11 B.C.D. 985 (BC WD Mo. 1984) where the oversecured creditors made no election. While the Court there

suggested reconsideration of the value of the surrendered property if the sale price did not match the appraisals, the basis for such reconsideration would be equitable principles of unjust enrichment rather than the election.

■ The Court finds that debtors may propose in their plan the return of part of the collateral in which creditors hold an interest in full satisfaction of the debt but also finds that if a sale of the surrendered collateral does not pay the claims in full, the deficiency must be treated as a secured claim.

### III

Debtors propose to give one secured creditor, Sherman Smith, a junior lien in property to be surrendered in return for his first deed of trust position in a portion of the property to be retained. The creditor objects. Theoretically such a proposal could be confirmed because the sale of the surrendered property will produce sufficient proceeds to pay all of the lienholders. *Country Life Apartments, Inc. v. Buckley*, 145 F.2d 935 (2d Cir.1944). There is, of course, no guarantee of such a result. Alternatively this creditor who holds a small claim, in order to protect his secured position, might have to spend substantial sums of money to buy out senior lienholders. Can this creditor be compelled to accept this arrangement?

The Court has ruled that this creditor is impaired. The creditor assumed that he was impaired and suggested that he would vote against confirmation. On that state of facts, the Court would, therefore, have to confirm under the provisions of Section 1129(b) which requires that the plan "does not discriminate unfairly and is fair and equitable, with respect to each class of claims ... that is impaired under, and has not accepted, the plan".

■ Section 1129(b)(2) defines fair and equitable as to a class of secured claims as requiring inter alia "that the holders of such claims retain the lien securing such claims, whether the property subject to

such lien is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims...". The legislative history states that the test is a codification of the absolute priority rule. House Report No. 95–595, 95th Cong., 1st Sess. 413–414. *In re Barrington Oaks General Partnership*, supra. The absolute priority rule requires that senior creditors receive the full benefit of their bargain before treatment of junior claims. *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939); *Securities and Exch. Com'n v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

■ The Court holds that the proposal to substitute security as to creditor Smith violates the absolute priority rule. According to debtors' plan, the substitution takes Smith's first position and gives him an indeterminate one. On appearances his position in the property to be surrendered looks like a third deed of trust. Junior lienholders might then be paid before him. The proposal is neither fair nor equitable. The Court also holds that the proposal is discriminatory as to Smith. His is the only first position which is subordinated to the positions of other secured creditors.

■ In addition, the Court notes that the whole proposal to surrender property in satisfaction of debt may be defective in that there is no provision for recapture of funds if the sale of the property produces an excess over the present value of the claim of creditors. Oversecured creditors are entitled to receive only the present value of the allowed amount of their claim in cash. Section 1124(3)(A) of the Code; Section 1129(a)(7) of the Code. Unlike foreclosure, the creditors here are not entitled to whatever the property brings at a sale but only the amount of their claim.

### IV

Debtors are granted to August 17, 1984 to amend their plan in accordance with the Court's holdings as hereinabove set out.