**In re Charles T. and Betty H. BERNARD, Debtors.**

**Bankruptcy No. JO 85–151M.**

United States Bankruptcy Court, E.D. Arkansas, Jonesboro Division.

Nov. 5, 1986.

Ben F. Arnold, James G. Dowden, Little Rock, Ark., for debtors.

Ralph W. Waddell, Jonesboro, Ark., for Federal Land Bank.

Stephen M. Reasoner, Jonesboro, Ark., for Federal Land Bank.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On March 4, 1986, Charles T. Bernard and Betty H. Bernard (debtors) filed their amended plan of reorganization. A confirmation hearing was held in Jonesboro, Arkansas, on the 22nd day of April 1986. The Federal Land Bank of St. Louis (Land Bank), which is a class III secured creditor, filed a written objection to confirmation and also voted to reject the plan. All other classes of creditors voted to accept the plan of reorganization which proposes to pay all creditors in full.

For a plan of reorganization under chapter 11 to be confirmed, the requirements of 11 U.S.C. § 1129 must be met. This section has eleven prerequisites for confirmation and all must be met except 11 U.S.C. § 1129(a)(8) which provides that each class must accept the plan or be unimpaired. A plan may still be confirmed over the dissent of one or more classes of impaired claims if the plan satisfies all other requirements of 11 U.S.C. § 1129(a) and the cramdown standards set forth in 11 U.S.C. § 1129(b).

In addition to the consideration of objections raised by creditors, the Court has a mandatory independent duty to determine whether the plan has met all of the requirements necessary for confirmation. *In re Coastal Equities, Inc.,* 33 B.R. 898

(Bkrtcy.S.D.Cal.1983); *Matter of Nikron, Inc.*, 27 B.R. 773 (Bkrtcy.E.D.Mich.1983); *In re Maxim Industries, Inc.*, 22 B.R. 611 (Bkrtcy.D.Mass.1982); *In re Economy Cast Stone Co.*, 16 B.R. 647 (Bkrtcy.E.D. Va.1981).

The reorganization plan treats the claim of the Land Bank under article III, page 7, paragraph 3.02 as follows:

This secured creditor holds a promissory note executed by Debtors dated March 26, 1981, secured by (a) a first mortgage from Debtors to The Federal Land Bank of St. Louis of even date and recorded on April 9, 1981, in Book 91 at Page 245 in the Recorder's Office of Sharp County, Arkansas; (b) an assignment of rents from Debtors to The Federal Land Bank of St. Louis dated May 27, 1983, and (c) a claimed first lien security interest under 12 U.S.C. § 2054 in stock in The Federal Land Bank of St. Louis owned and held by Debtors in the amount of $12,500.00. The aforementioned promissory note was in the principal amount of $250,000.00 as to principal and bore an original interest rate of 11¾% per annum. The interest rate, however, is variable. The approximate principal and interest balance due under the promissory note is $293,235.78 as of October 30, 1985, plus interest from said date at the rate of $92.24488 per day (subject to increase at the next installment date and in the event advances were made pursuant to claimant's mortgage), attorney's fees, and costs. It is anticipated that the unpaid balance of this secured claim as of January 21, 1986, will be approximately $300,000. The amount of real estate securing this loan is approximately 1,700 acres situated in Sharp County, Arkansas. The real estate consists primarily of fenced pasture land and forest land. There are also a residential structure and storage shed on the mortgaged property. Debtors propose to pay this secured claim in full by listing for sale approximately 450 acres of said real estate more particularly described in Exhibit "A" attached hereto with the net sale proceeds at closing to be paid to The Federal Land Bank of St. Louis. The listing price for said 450 acres is $300.00 per acre pursuant to a real estate contract between Debtors and [C]entury 21 Rich Wood Realty, Highway 167, Ash Flat, Arkansas, which listing agreement will expire by its terms on May 2, 1986. The date of the real estate listing contract is November 2, 1985. If the property is sold on or before May 2, 1986, the net sale proceeds after the commission and closing costs will be paid to the Federal Land Bank of St. Louis. Provided the property is not sold pursuant to the real estate listing contract by May 2, 1986 (the expiration date), Debtors will convey by warranty deed to The Federal Land Bank of St. Louis the 450 acres of real estate for credit against the secured claim of this creditor at a price of $225.00 per acre (total credit of approximately $101,250.00), which valuation is based on and supported by an appraisal recently made by Debtors' appointed appraiser, Rhona Weaver, and introduced into the record of an October 21, 1985, hearing on a complaint for relief from the stay filed by The Federal Land Bank of St. Louis. Pursuant to the terms of a written escrow agreement to be executed on the Effective Date of the Plan by Debtors, Federal Land Bank of St. Louis, and Odell Pollard, a warranty deed to the remaining 444.09 acres will be placed in escrow and there held by the escrow agent for the benefit of the Federal Land Bank of St. Louis to be conveyed by the escrow agent to the Federal Land Bank of St. Louis after January 1, 1987. After January 1, 1987, Debtors will transfer or cause to be transferred by the escrow agent title to the remaining 444.09 acres to the Federal Land Bank of St. Louis for an additional credit of approximately $108,802.05 (depending on the exact appraised value of said lands at the confirmation date) or, at their option, will resume making payments under the existing loan arrangement. The new loan balance will continue to be secured by a first mortgage on the remaining acres in Sharp County,

Arkansas. The reason for utilizing the escrow arrangement as a method of conveyance of the 444.09 acres is to delay the realization of anticipated substantial capital gains taxes which likely will be generated by these transaction. In addition, on the Effective Date of the Plan, Debtors will surrender to this secured creditor for immediate credit their stock interest in The Federal Land Bank of St. Louis, which stock has a value of not less than $12,500.00. Therefore, after these transactions are consummated, Debtors will be entitled to a credit of at least $2244000.00 [sic] against the total balance due of principal and accrued interest which amounts to approximately $300,000.00 as of January 21, 1986. The consummation of the aforementioned transactions will bring all delinquencies current, will reinstate the loan on a current basis, and will cure any defaults. For purposes of 11 U.S.C. § 1124, this secured creditor is deemed unimpaired under the Plan since its secured claim will be fully paid as aforementioned, all defaults which existed either pre-petition or post-petition will be cured, all arrearages paid current, and future payments under the existing note and mortgage will be made as they become due thereunder. An adversary proceeding will be filed to collect all past due rents due Debtors from the tenant on said property.

The plan also describes the treatment of Land Bank's claim at page 22, paragraph 6.03:

The Class III secured claim of The Federal Land Bank of St. Louis, which is secured by a first mortgage on 1,700 acres of pasture land and woodlands owned by Debtors in Sharp County, Arkansas, an assignment of rents, Debtors' stock interest in The Federal Land Bank of St. Louis, and perhaps other security will be paid and satisfied in full by:

(a) The sale of 450 acres at $300.00 per acre pursuant to a real estate contract by Debtors and Century 21 Richwood Realty. If said 450 acres, more particularly described in Exhibit "A" attached hereto and incorporated herein as if set out word for word, is not sold by May 2, 1986, that 450 acres will be conveyed immediately thereafter by warranty deed to the Federal Land Bank of St. Louis. In that event, the balance due the Federal Land Bank of St. Louis will be credited at a value of approximately $225.00 per acre, or a total credit of $101,250.00;

(b) Surrender by Debtors on the Effective Date of the Plan to the Federal Land Bank of St. Louis of Debtors' stock therein having a value of $12,500.00 for an immediate loan credit in that amount; and

(c) A warranty deed to the remaining 444.09 acres will be placed in escrow under a written escrow agreement for the benefit of the Federal Land Bank of St. Louis to be conveyed to the Federal Land Bank of St. Louis by the escrow agent after January 1, 1987. The reason for utilizing this method of conveyance is to delay the likely realization of substantial capital gains taxes which will probably be generated by these transactions. In January of 1987, at their sole option, Debtors will resume payments under the existing note as reduced herein by certain credits or will transfer, or cause to be transferred by warranty deed form escrow title to the 444.09 acres to the Federal Land Bank of St. Louis for additional credit at the rate of $245.00 per acre or $108,802.05 (depending on exact appraised value of said lands at confirmation date). The new loan balance will be paid in fifteen (15) equal annual installments of principal and interest beginning January 1, 1987, with an appropriate interest rate to be determined by the Bankruptcy Court on the Confirmation Date of the Plan equal to the then-prevailing market rate of interest for a similar agricultural type loan unless Debtors and the Federal Land Bank of St. Louis can agree on the interest rate provided for in the existing note as being variable. The new loan balance will continue to be secured by a first mortgage

on the remaining acres in Sharp County, Arkansas.

The existing second mortgage of Class XIV secured creditor, Odell Pollard, will be paid in the manner above set forth in Article IV. The amount of this unpaid secured obligation, past due since 1981, is approximately $9,366.84.

I

## THE CLAIM OF LAND BANK IS IMPAIRED

▪ The debtors assert that the claim of the Land Bank is unimpaired by the terms of the plan and, therefore, this creditor is deemed to have accepted the plan. 11 U.S.C. § 1124 provides the following criteria for determining whether a claim is unimpaired:

Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—

(A) with respect to a claim, the allowed amount of such claim; or

(B) with respect to an interest, if applicable, the greater of—

(i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; or

(ii) any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder.

Cases construing 11 U.S.C. § 1124 hold that the plan must propose to cure the arrearage on or before its effective date and not otherwise alter the legal rights of the creditor in order for the claim to be deemed not impaired. *In re Otero Mills, Inc.*, 31 B.R. 185 (Bkrtcy.D.N.M.1983); *In re Jones*, 32 B.R. 951 (Bkrtcy.D.Utah 1983); *In re Rolling Green Country Club*, 26 B.R. 729 (Bkrtcy.D.Minn.1982).

This plan does not meet the requirements of 11 U.S.C. § 1124. The prepetition rights which Land Bank held were generally the right to be paid in cash plus interest in monthly installments of $32,946.57 with the final payment being made January 1, 2001, and the right to be secured by a first lien on 1,700 acres which the Land Bank could foreclose and sell to satisfy the claim in the event of a default by the debtors.

The plan proposes to sell 450 acres of Land Bank's collateral and use the proceeds from the sale to cure the arrearage. In the alternative, the debtors will deed the 450 acres to Land Bank if this property is not sold by May 2, 1986, and a credit of $101,250.00 will be given the debtors if this property is deeded to Land Bank. The plan also proposes to execute a warranty deed to 444.09 acres and place it in escrow with instructions that delivery of the deed is to be made to Land Bank after January 1, 1987, for an additional credit of $108,802.05

or, at the debtors' option, the debtors will, at a time not specified by the plan, commence making payments in an amount equal to the existing loan agreement with the Land Bank. The plan states that Land Bank will hold as security a first mortgage on the remaining acres in Sharp County, Arkansas. The debtors also propose to convey Land Bank's patronage stock back to Land Bank for a credit of $12,500.00. The balance remaining after these conveyances is proposed to be repaid in fifteen equal annual installments of principal and interest beginning January 1, 1987, with the interest rate to be determined by the Court at the current market rate.

Since the proposed plan alters the prepetition legal rights of Land Bank, the claim of the Land Bank is impaired. If the plan is to be confirmed, it must meet the requirements of 11 U.S.C. § 1129(b).

## II

## CRAMDOWN

■ The debtors argue alternatively that the plan may be confirmed under the cramdown provisions of 11 U.S.C. § 1129(b)(2)(A)(i)(I) and (II) or (b)(2)(A)(iii) notwithstanding the rejection by Land Bank. 11 U.S.C. § 1129(b) includes the requirement that the plan be fair and equitable to a dissenting class of secured creditors. 11 U.S.C. § 1129(b)(2)(A)(i)(I) and (II) and (b)(2)(A)(iii) provides that the plan provide with respect to secured claims as follows:

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; [or]

. . . .

(iii) for the realization by such holders of the indubitable equivalent of such claims.

Section 1129(b) requires the plan to propose to pay in cash the equivalent of the present value of a fully secured claim if the claim is impaired or to give to the secured creditor the indubitable equivalent of the present value of its claim. The debtors' plan proposes to satisfy Land Bank's claim by distributing both cash and real property. The issue is whether this plan provides for the realization by Land Bank of the indubitable equivalent of its claim.

## III

## THE VALUE OF THE LAND TO BE TRANSFERRED TO FEDERAL LAND BANK

The plan proposes to pay a portion of the Land Bank's claim by abandoning to it a portion of its collateral for a credit of $225.00 per acre. The Land Bank objected to this treatment claiming it was an unfair discrimination and that the value of $225.00 per acre was too high. The indubitable equivalent of the Land Bank's claim may be achieved by abandoning to it all or a portion of its collateral of a value equal to the present value of its claim. *In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 825 (Bkrtcy.S.D.N.Y.1982), *reargument denied,* 21 B.R. 478 (Bkrtcy.S.D.N.Y.1982). The property to be distributed to Land Bank is to be valued as of the effective date of the plan. *See* 5 *Collier on Bankruptcy* ¶ 1129.07 (15th ed. 1981).

The debtors' appraiser, Ms. Weaver, valued the 450 acres to be conveyed at $225.00 per acre while the Land Bank's appraiser valued the property at $200.00 per acre. Both appraisers offered evidence of comparable sales which supported their respective appraisals. Ms. Weaver's appraisal of $225.00 per acre at this hearing is seriously weakened by a prior appraisal of the same property earlier in the case at $175.00 per acre. However, the difference in the two confirmation hearing appraisals is only

$25.00 an acre which indicates a substantial agreement as to the value. The Court will accept Land Bank's testimony of $200.00. Valuing the 450 acres at $200.00 per acre allows a total credit of $90,000.00 toward the debt.

The plan provides for the conveyance of 450 acres of land on May 2, 1986. Because of the time the case has been under advisement, execution of this portion of the plan is impossible. Because of the delay, and because the fair market value of the 450 acres has been determined to be $200.00 per acre and not $225.00, the plan is substantially altered from what debtors originally offered Land Bank. The debtors are given thirty days from the date of the entry of this memorandum opinion and order of this same date to amend the plan. The amended plan must set forth an exact legal description of property to be conveyed and must set forth that the property is to be conveyed by warranty deed, free and clear of all encumbrances of record.

The plan also proposes that the remaining 444.09 acres, more or less, of land be placed in escrow and conveyed on January 1, 1987, to the Land Bank. Since a legal description was not set forth in the plan, neither the exact amount of land nor the location is known. The value of this land is fixed at $200.00 per acre based on the testimony of witnesses for Land Bank. Any amended plan must include an exact legal description of the property to be conveyed and must set forth that the property is to be conveyed by warranty deed free and clear of all encumbrances of record.

The plan proposes to pay the balance of the Land Bank debt in fifteen equal installments of principal and interest beginning January 1, 1987. The Land Bank claim will be secured by a first lien on the remaining property in Sharp County, Arkansas. To constitute the indubitable equivalent of Land Bank's claim, the debtors must propose to execute a new first mortgage or deed of trust to Land Bank with substantially all of the provisions of the original prepetition mortgage or deed of trust and with a correct and specific legal description of the collateral. In addition, the plan must also propose that the debtors execute a new note to Land Bank in the exact amount of the remaining balance of Land Bank's debt containing substantially the same terms and conditions as the original promissory note.

The proposed plan stated that the Court was to fix the interest rate to be applied to the remaining balance. No party introduced any evidence on this issue. Therefore, the Court fixes the interest rate on the balance owed to Land Bank at the rate fixed by the original note.

The debtors have thirty days from the date of the entry of this memorandum opinion and order of this same date to amend the plan of reorganization to comply with the requirements of 11 U.S.C. § 1129(b) at set forth herein and to submit the amended plan to all of the creditors for consideration.

IT IS SO ORDERED.