**In re Norman Edward DURR and Garnet Aho Durr, d/b/a Ranchers, Debtors.**

**Bankruptcy No. 87–50047.**

United States Bankruptcy Court, D. South Dakota.

Sept. 25, 1987.

Wesley W. Buckmaster, Stephens, Quinn & Buckmaster, Belle Fourche, S.D., for creditor Norwest Bank South Dakota, N.A.

John M. Fousek, Fousek, Lefholz & Mairose, Rapid City, S.D., for debtors.

## MEMORANDUM DECISION

### INTRODUCTION

PETER K. ECKER, Bankruptcy Judge.

This matter is before the Court on an objection to confirmation of the debtors' Chapter 12 plan of reorganization on the ground that it does not comply with 11 U.S.C. § 1225(a)(5). Specifically, secured creditor Norwest Bank South Dakota, N.A. ("Norwest"), contends that the debtors may not transfer certain real property to Norwest in payment of the value of the allowed amount of Norwest's secured claim, when the real property Norwest is to receive pursuant to the plan did not secure the Norwest debt. Norwest maintains that it will not receive the benefit of its bargain with the debtors and, thus, will not be paid the value of its claim. A confirmation hearing on the plan was held in Rapid City, South Dakota, on July 28, 1987. The material facts are as follows.

### BACKGROUND

The debtors filed for relief under Chapter 12 of the Bankruptcy Code on February 19, 1987. As listed in their schedules, the debtors own several parcels of real property in Butte County, South Dakota: the River Ranch property, consisting of approximately 2,100 acres; Farm No. 2, consisting of approximately 303 acres; Crow Creek Ranch, consisting of approximately 6,480 acres; and Arpan Ranch, totaling approximately 2,117 acres. In addition, the debtors own a residence situated on 120 acres.

The debtors are indebted to creditor Norwest on an "agricultural note," secured by a first mortgage on the River Ranch and Farm No. 2 properties. This note is also secured by a security interest in farm machinery, equipment, and vehicles, and an assignment of proceeds from certain contracts for deed. The debtors also are indebted to Norwest on a "residential note," secured by a first mortgage on the residential dwelling and its 120 acres.[1]

---

1. Debtors have failed to provide for the treatment of the "residential note" to Norwest Bank, secured by a mortgage on the residence and 120 acres. This omission is one of the grounds for Norwest's pending motions for relief from the

Further, the debtors are indebted to creditor Metropolitan Life Insurance Company ("Metropolitan Life") of Billings, Montana, on an "agricultural note," secured by a first mortgage on the Crow Creek and Arpan properties. It appears that real estate taxes on the Arpan Ranch property have not been paid for 1986 and 1987. It is unclear whether there are outstanding irrigation water charges affecting the value of the Arpan Ranch property.

On May 22, 1987, the debtors filed their Chapter 12 plan of reorganization. In their plan, the debtors propose to deed to Norwest the Arpan Ranch, in full satisfaction of their debt. Upon receiving this deed, Norwest would be required to mark its notes paid and release all mortgages and security interests on the debtors' collateral.

The debtors also intend to transfer the Crow Creek Ranch to Metropolitan Life in full satisfaction of their obligations to that creditor. Again, Metropolitan Life will be required to mark its notes paid and release all mortgages and security interests in the debtors' collateral.[2]

In addition to its objection to its plan treatment, Norwest has asked for a hearing on the value of its secured claim pursuant to 11 U.S.C. § 506(a). At the confirmation hearing on July 28, the Court denied confirmation of the plan, due to the following unresolved issue.

### ISSUE

Whether a Chapter 12 plan complies with 11 U.S.C. § 1225(a)(5)(B)(i) and (ii), if the debtors contemplate the retention of collateral real estate and the transfer of other real property in kind to the creditor in full satisfaction of that creditor's claim.

### DISCUSSION

The Court holds that 11 U.S.C. § 1225(a)(5)(B)(ii) does not permit the debtors to transfer real property in payment of an allowed secured claim, unless the debtors' Chapter 12 plan provides safeguards to

protect the value of the creditor's allowed secured claim. A determination of whether Norwest will receive the full value of its claim cannot be made "as of the effective date of the plan." Such a determination must wait until Norwest has sold the Arpan Ranch property. This holding is based on the following discussion.

Pursuant to 11 U.S.C. § 1225(a), this Court shall confirm a Chapter 12 plan if . . .

> (5) with respect to each allowed secured claim provided for by the plan—
>
> (A) the holder of such claim has accepted the plan;
>
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
>
> (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or
>
> (C) the debtor surrenders the property securing such claim to such holder; and . . . .

Clearly, Norwest has not accepted the plan, nor have the debtors surrendered the property securing Norwest's claim, eliminating the possibility that Subsections 1225(a)(5)(A) or (C) apply in this instance. Thus, the debtors' plan must satisfy both conditions of Section 1225(a)(5)(B) to meet the requirements for confirmation.

The debtors propose that Norwest will retain its lien on the River Ranch and Farm No. 2 properties until it receives the deed to the Arpan Ranch. Because the lien retention requirement of Section 1225(a)(5)(B)(i) protects the secured claimant only until it receives the value of its allowed claim, the question becomes whether Norwest will have received the value of its secured claim at the time it receives the deed to the Arpan Ranch. *See* 11 U.S.C. § 1225(a)(5)(B)(ii).

automatic stay, or, alternatively, adequate protection and an accounting.

2. Metropolitan Life also has objected to its treatment under the plan and has filed a motion for valuation pursuant to 11 U.S.C. § 506.

■ Pursuant to 11 U.S.C. § 506(a), the claim of a creditor secured by a lien on property is an allowed secured claim to the extent of the value of the creditor's interest in the estate's interest in the property. The value of this allowed secured claim may be established by consent of the parties or by the court. *See In re Mikkelsen Farms, Inc.*, 74 B.R. 280, 291 (Bankr.D.Or. 1987). Traditionally, if the debtor seeks to retain the collateral in its reorganization plan, the creditor receives the value of its secured claim through a stream of cash payments which would have a present value equivalent to the amount of its secured claim. *See Matter of Doud*, 74 B.R. 865 (Bankr.S.D.Iowa 1987); *In re Janssen Charolais Ranch, Inc.*, 73 B.R. 125 (Bankr. D.Mont.1987). As of the effective date of the plan, the creditor (and the court) is able to make a precise calculation of the value of the property the creditor will receive, over the term of the plan, on account of its secured claim.

■ In this case, however, the debtors propose to retain the real property securing Norwest's claim, and transfer to Norwest other real property as a substitute for the traditional cash payments. After a determination of the value of Norwest's secured claim, a hypothetical market value for the transferred property must be ascertained. *See In re Mikkelsen*, 74 B.R. at 291. Presumably, the debtors then would be credited with this specific dollar amount, when the Arpan property is deeded to Norwest. The plan intends to treat this transfer as payment in full of Norwest's claim.

There is no legal obstacle to the confirmation of an "asset payment" plan in a Chapter 12 case. No language in either Chapter 12 or Chapter 13 addresses the transfer of tangible property as payment to the creditor on account of its allowed secured claim. *Id.*[3] It has been stated, however, that the language of both Section 1322(b)(8) and Section 1222(b)(7) allows such a transfer. *Id.* Section 1322(b)(8) provides:

> "(b) Subject to subsections (a) and (c) of this section, the plan may—
>
>     . . . .
>
>     (8) provide for the payment of all or part of a claim against the debtor from *property* of the estate or *property* of the debtor; . . . ." (emphasis added)

Section 1222(b)(7) states:

> "(b) Subject to subsections (a) and (c) of this section, the plan may—
>
>     . . . .
>
>     (7) provide for the payment of all or part of a claim against the debtor from *property* of the estate or *property* of the debtor; . . . ." (emphasis added)

In addition, the secured creditor "cramdown" requirements of Section 1225(a)(5) are identical to those of Section 1325(a)(5).[4] The legislative history and commentary for Chapter 13 both indicate that "the secured creditor in a case under chapter 13 may receive *any property* of a value as of the effective date of the plan equal to the allowed amount of the creditor's secured claim rather than being restricted to receiving deferred cash payments." (emphasis added) 124 Cong.Rec. § 11,107 (daily ed. Sept. 28, 1978); *see also In re Simmons*, 765 F.2d 547, 554 n. 8 (5th Cir.1985) ("[o]ther property may be conveyed to the

---

**3.** The legislative history of Chapter 12 indicates that Chapter 12 was "closely modeled after existing chapter 13." H.R.Rep. No. 958, 99th Cong., 2d Sess. 48, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5227, 5246, 5249. In addition, the courts hold that Chapter 13 case precedents provide a valuable tool for the interpretation of Chapter 12 provisions because of the similar or identical language of each chapter. *In re Janssen Charolais Ranch, Inc.*, 73 B.R. at 126.

**4.** 11 U.S.C. § 1325(a)(5)(B) provides:
(a) Except as provided in subsection (b), the court shall confirm a plan if—
     . . . .

(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of *property* to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder; and. . . . (emphasis added)

secured creditor, in lieu of further payments, to meet the section 1325(a)(5)(B)(ii) standard"); 5 *Collier on Bankruptcy* § 1325.06[4][b][ii] (15th ed. 1987). Thus, the use of the word "property" in both Sections 1222(b)(7) and 1225(a)(5), rather than the restrictive term, "deferred cash payments," [5] and the Congressional reference to "any property" in the Chapter 13 legislative history imply that an "asset payment" plan is permissible. *See In re Mikkelsen,* 74 B.R. at 291.

A practical problem, nonetheless, occurs in the confirmation of this plan, pursuant to 11 U.S.C. § 1225(a)(5)(B). The difficulty arises in determining whether the land offered to Norwest is worth "not less than" the amount of Norwest's secured claim. *See In re Walat Farms, Inc.,* 70 B.R. 330, 333 (Bankr.E.D.Mich.1987). Given the inherent problem of fixing the value of real property, it is certain Norwest will not realize the exact amount of the Arpan property as set by this Court.[6] On one hand, Norwest's eventual sale of the Arpan Ranch may not produce sufficient proceeds to pay its secured claim. *See id.* at 336. At the same time, Norwest could receive more than one hundred percent of its allowed secured claim from the proceeds of the sale. *See In re Elijah,* 41 B.R. 348, 352 (Bankr.W.D.Mo.1984). The value of the real property to be distributed to Norwest on account of its secured claim cannot be calculated with any certainty until the property is actually sold. Thus, the plan fails to meet the requirements for confirmation pusuant to 11 U.S.C.

§ 1225(a)(5)(B)(ii), because the Court must determine, as of the effective date of the plan, whether Norwest will receive "not less than the allowed amount of its secured claim."

Furthermore, the "forced purchase" of the Arpan Ranch by Norwest must be carefully scrutinized by the Court pursuant to its equitable powers. In the legislative history of Chapter 12, it was recognized that "creditors should not shoulder all the burden of the current farm crisis and that creditors are at risk as well. When administrating this chapter 12, the courts should strive to preserve this equity balance between creditors' and debtors' rights." 132 Cong.Rec. § 15,075 (daily ed. Oct. 3, 1986) (statement of Sen. Thurmond). First, the asset payment plan of the debtors potentially will require at least two valuation hearings pursuant to 11 U.S.C. § 506(a). Second, many delays and complications are inevitable before Norwest receives the full amount of its secured claim, including the uncertainty of finding a buyer for the Arpan Ranch. At the least, this Court must be certain that the creditor is not shouldering an inequitable portion of the burden of the present farm crisis and must be assured that the secured creditor will receive, on the effective date of the plan, the full value of its secured claim.

This practical difficulty with the transfer of real property in payment of an allowed secured claim has been discussed in two Chapter 11 cases.[7] The debtor's plan in *In re Walat Farms* proposed to convey to the

---

5. *See* 11 U.S.C. § 1129(b)(2)(A)(i)(II) (the holder of a secured claim must receive on account of such claim deferred cash payments). Chapter 11 "asset payment" plans, however, have been confirmed pursuant to the "indubitable equivalent" cram-down alternative of 11 U.S.C. § 1129(b)(2)(A)(iii). *See, e.g., Matter of Sun Country Development, Inc.,* 764 F.2d 406 (5th Cir.1985); *In re Bernard,* 70 B.R. 181 (Bankr.E. D.Ark.1986).

6. Some authorities have stated that it is impossible to fix the value of real estate. *See In re Walat Farms, Inc.,* 70 B.R. at 334.

7. Although asset payment plans in Chapter 11 cases are confirmed under the "indubitable equivalent" provision of Section

1129(b)(2)(A)(iii), the objecting creditor must receive nothing less than the present value of its allowed secured claim. *See In re Bernard,* 70 B.R. 181, 185 (Bankr.E.D.Ark.1986); *see also* 5 *Collier on Bankruptcy* § 1129.03[4][c] (15th ed. 1987).

It should also be noted that only one Chapter 12 decision has authorized the farmer-debtor to deed an unencumbered parcel of land to a creditor in partial satisfaction of its claim. *In re Mikkelsen,* 74 B.R. at 291. The *Mikkelsen* case found no prohibitions against this transfer in kind, but failed to consider the practical consequences of the variable farm real estate market and the effect of this market on the requirements of Section 1225(a)(5)(B). Thus, the *Mikkelsen* decision is not helpful in determining how to protect a secured claim of a creditor.

major creditor a portion of that creditor's real property collateral in exchange for the discharge of its mortgage. *In re Walat Farms, Inc.*, 70 B.R. at 332. The bankruptcy court found no legal impediment to this transfer, but it had practical objections to the creditor's treatment. No guarantee existed that the creditor's eventual sale of the surrendered acres would produce sufficient proceeds to pay its claim. *Id.* at 336. Therefore, the court held that the land being offered was not the "indubitable equivalent" of the creditor's claim due to the impossibility of fixing a value for farm real estate. *Id.* at 334.

The *Walat Farms* decision, however, discussed various plan safeguards to protect the holder of the secured claim, so that the creditor would eventually realize the full value of its claim. First, the plan could provide the creditor with a "sufficiently comfortable equity cushion." *Id.* at 335 n. 4.[8] Second, the plan could give the creditor a lien on other real property, in the event that a commercially reasonable sale of the property results in proceeds less than the allowed amount of its claim. *Id.* at 335. The lien on the other real property would be augmented by any deficiency from the sale. *Id.* Last, the plan could propose the outright market sale of the land until the creditor's claim is satisfied.[9] *Id.* at 337. The *Walat Farms* court denied confirmation because the debtor's plan lacked any of these protections for the creditor's fully secured claim. *Id.*

Likewise, the bankruptcy court in *In re Sandy Ridge Development Corp.*, 77 B.R. 69 (Bankr.M.D.La.1987), denied confirmation of the debtor's reorganization plan. The plan proposed the transfer of real property to the creditor in satisfaction of its secured claim, but failed to include a surplus of value, a margin of allowance for error, so that the secured creditor would be sure to realize the "equivalent" of its claim. *Id.* at 72–73.

On the other hand, the court found that the inclusion of a substantial margin for valuation error could result in a transfer of more value to the creditor than necessary to satisfy its secured claim. *Id.* Thus, a plan proposing a payment with tangible property must also include a provision for recapture of funds if the sale of the property produces an excess over the present value of the claim of the creditor. *Id., quoting In re Elijah*, 41 B.R. at 352.

In the present case, the debtors' plan included none of the above-mentioned "safeguards" of a creditor's allowed secured claim. The plan estimated Norwest's claim on the "agricultural note" at approximately $216,938.83, but did not mention the "residential note." It valued the Arpan Ranch at approximately $263,196.00.[10] It does not specifically refer to any "margin for error," or equity cushion, in the event the sale of the ranch fails to bring the amount predicted. The plan also does not provide that Norwest will retain a lien on other property, which lien could be augmented, in the event a sale of Arpan Ranch results in proceeds less than the amount of the secured claim. Conversely, the plan does not allow for recapture of any excess proceeds, if the Arpan Ranch is sold for more than predicted. Therefore, unless the debtors provide some type of protection for the value of Norwest's allowed secured claim, and demonstrate that Norwest will receive "not less than the allowed amount of its secured claim," they may not transfer real property as payment in kind to creditor Norwest in satisfaction of the requirement of 11 U.S.C. § 1225(a)(5)(B).

Accordingly, the above and foregoing hereby constitutes the Court's Findings of

---

**8.** A sufficient equity cushion, nonetheless, could result in over-payment. The court noted that this situation would present no impediment to confirmation, if the plan did not modify its provision for one hundred percent payment of non-insider unsecured claims. *Id.* at 335 n. 4.

**9.** It should be pointed out that Congress specifically created a method by which debtors could rid themselves of unnecessary real estate or other property in their Chapter 12 reorganization by the inclusion of 11 U.S.C. § 1206. *See* H.R.Rep. No. 958, 99th Cong., 2d Sess. 50, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5246, 5251.

**10.** Although the plan states that the real estate taxes for 1986 and 1987 are outstanding, it is unclear whether this amount was deducted from the debtors' value of the Arpan Ranch.

Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and Fed.R.Civ.P. 52. Counsel for Norwest Bank is directed to submit an appropriate order in accordance with Bankr.R.P. 9021.