**In re PINE LAKE VILLAGE APARTMENT CO., Debtor.**

**Bankruptcy No. 81 B 20737. 82 Adv. 6001.**

United States Bankruptcy Court, S. D. New York.

May 4, 1982.

Burns & Fox, New York City, for debtor.

Zalkin, Rodin & Goodman, New York City, for Thomas J. Hartigan; Andrew D. Gottfried, New York City, of counsel.

## DECISION ON MOTION FOR REARGUMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor in this Chapter 11 case seeks reargument of this court's decision, 19 B.R. 819 (Bkrtcy.Ct.), dated April 23, 1982 granting the first mortgagee's request for relief from the automatic stay imposed under 11 U.S.C. § 362. Alternatively, the debtor requests that the stay be continued pending its appeal. The facts were stated in this court's previous decision, and will not be repeated here. However, the debtor correctly notes that this court did not consider its alternative plan of reorganization that it filed simultaneously with the plan of reorganization discussed in the decision dated April 23, 1982. Accordingly, the debtor maintains that the alternative plan of reorganization supports its position that the automatic stay should not be lifted.

The alternative plan was not considered because the debtor apparently filed both plans without explaining to the docket clerk that one was not merely a copy of the other. Hence, both sets of papers were docketed as one plan. Only one set of papers was included with the motion papers; the other set remained in the case file.

Although the debtor presents the matter in an alternative fashion in that the mortgagee and the court are requested to choose which of the two plans is more palatable, the clear answer is that neither plan is acceptable. The alternative plan that the debtor now stresses is facially more offensive to the standards imposed under Chapter 11 than the plan reviewed by the court in the April 23rd decision.

The alternative plan also treats the administrative claims and wage claims as unimpaired within the meaning of 11 U.S.C. § 1124 because they are to be paid in full and in cash upon the effective date of the confirmation of the plan.

The debtor proposes to pay the first mortgagee's secured claim with a cash payment of $350,000, plus the debtor's own note for the balance of the mortgagee's allowed secured claim payable over a period of thirty years at an interest rate of 15.75 per cent per annum. Since it has been found that the property covered by the first mortgage is now worth $6,400,000, as compared with an original mortgage principal of $10,400,000, it follows that the debtor's note would have to have a value at confirmation of approximately $6,050,000, which is the value of the mortgagee's interest in the estate's interest in the property, as expressed in 11 U.S.C. § 1129(b)(2)(A)(i)(II) after subtracting the cash payment of $350,000.

The payment of $6,050,000 in self-liquidating amounts over a period of thirty years, at 15.75 per cent interest per annum would require monthly payments of approximately $84,000. The debtor's monthly net income, as previously found, is $87,073.49. Moreover, as previously observed by this court, the debtor is a limited partnership, with one corporate general partner. Thus, its liability for repayment is limited. The debtor's financial structure is questionable. Surely a $6,050,000 note payable by this financially troubled debtor at 15.75 per cent interest per annum cannot be regarded as the indubitable equivalent value of a right to receive $6,050,000 as of the effective date of the plan of reorganization.

More significantly, the debtor concludes that since the first mortgagee's claim of nearly $14,000,000 at the time the Chapter 11 petition was filed cannot be satisfied out of property worth only $6,400,000, the deficiency claim, aggregating approximately $7,600,000, should be eliminated entirely. Hence, unlike the other reorganization plan where the deficiency claim is also to be paid over a period of thirty years, with interest at 15.75 per cent per annum, the debtor proposes not to pay at all the unsecured portion of the mortgagee's claim. Therefore, the deficiency claim is deemed rejected under 11 U.S.C. § 1126(g) without considering the mortgagee's previously announced rejection. However, it is not the deemed rejection that poses a problem for the debtor; it is the deemed acceptance under 11 U.S.C. § 1126(f) that still presents an obstacle.

■ The debtor's alternative plan similarly places the trade creditors in a separate class and proposes to pay them in full as of the effective date of the plan. Since this class is not impaired within the meaning of 11 U.S.C. § 1124, they are deemed to have accepted the plan in accordance with the language in 11 U.S.C. § 1126(f). As previously indicated in this court's decision dated April 23, 1982, an unimpaired class that is deemed to have accepted the debtor's plan does not satisfy the requirement under 11 U.S.C. § 1129(a)(10) that at least one class of claims has accepted the plan; an affirmative acceptance of an impaired class is required. See cases cited in the April 23, 1982 decision.

The debtor also runs afoul of this court's previous ruling that payment in full to one group of unsecured claimants while proposing less favorable treatment of the mortgagee's unsecured deficiency claim (no payment at all under the alternative plan as compared with a thirty year payout under the first plan) clearly discriminates unfairly, as forbidden under 11 U.S.C. § 1129(b)(1).

Although the debtor argues that the separate treatment for the trade creditors is justifiable because of an alleged subordina-tion clause, this court adheres to the determination that the mortgagee merely postponed its right to receive interest until maturity and that it did not subordinate its right to receive a distribution in this Chapter 11 case to the claims of trade creditors. No priority status for trade creditors' claims after maturity of the mortgage (which occurred after March 1, 1982) was ever established.

In the previously discussed plan the debtor's general and limited partners were placed in a separate class and were to retain their interests without impairment. The alternative plan also creates a separate class for general and limited partners but they will retain their interests only to the extent of new contributions, which they propose to make, totalling $700,000, or perhaps more. Exactly how much they will contribute is not too precise. In essence, they recognize that they have no equity in this property, but they would like to hold off the first mortgagee who is now owed approximately $14,000,000, by a contribution of $700,000 in order to protect their tax sheltered interests which were lost.

■ There is no question that the partners' renunciation of their previously contributed interests amounts to an economic impairment. However, the partners cannot be considered as creditors for the purpose of creating one affirmatively accepting class because 11 U.S.C. § 1129(a)(10) requires "one class of *claims.*" (Emphasis added). The limited partners' interests do not constitute "claims" as defined under 11 U.S.C. § 101(4). They are equity security holders, as defined under 11 U.S.C. § 101(16), holding equity securities within the meaning of 11 U.S.C. § 101(15)(B). Simply put, an equity interest is not a claim against the debtor for which the equity holder may assert a right to payment. Thus, under 11 U.S.C. § 501(a) a creditor may file a proof of claim and an equity security holder may file a proof of interest. The accepting class under 11 U.S.C. § 1129(a)(10) does not include a class of equity interests; only creditors who may file proofs of claims may comprise the affirmatively accepting class of impaired claims.

The debtor's patent failure to satisfy the need for one accepting class pursuant to 11 U.S.C. § 1129(a)(10) compels a conclusion that the plan does not comply with the applicable provisions of Chapter 11, as required under 11 U.S.C. § 1129(a)(1). Moreover, the fair and equitable rule under 11 U.S.C. § 1129(b)(2)(B)(i & ii) cannot be met if the debtor's general partner or its limited partners will retain any interests while the mortgagee receives nothing at confirmation on its deficiency claim. Junior interests may not retain interests while senior classes of claims are paid nothing.

To say that the debtor's general and limited partners relinquish their interests under the alternative plan and that they will only hold interests to the extent of their pro rata portion of the $700,000 they propose to contribute to the debtor, does not detract from the mortgagee's right to relief from the stay. Indeed, this argument is tantamount to saying that the partners have no present interest in the property but they should nevertheless be permitted to hold off the mortgagee who holds claims totalling nearly $14,000,000, of which $6,400,000 is secured and at risk. To state the issue is to answer it.

The mortgagee is entitled to relief from the stay for the reasons stated herein and previously stated in this court's decision dated April 23, 1982. The debtor's motion for reargument is denied.

The debtor's request for a stay pending appeal will be granted if the debtor files with the court a satisfactory surety bond in the sum of $400,000 to cover the mortgagee's costs and damages that may be incurred during such stay and on condition that the debtor continues to apply all income from the property for its maintenance, taxes and postpetition trade creditors.

SUBMIT ORDER on notice.