**In re CHANNEL REALTY ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

Bankruptcy No. 91–20613–JNG.

United States Bankruptcy Court, D. Massachusetts.

July 17, 1992.

James Wallack, Goulston & Storrs, Boston, Mass., for movant.

Gary W. Cruickshank, Boston, Mass., for debtor.

## MEMORANDUM

JAMES A. GOODMAN, Chief Judge.

### I. PROCEDURAL BACKGROUND

This matter is presently before the Court on the Motion of Nationwide Life Insurance Company to Dismiss the Case or for Relief from the Automatic Stay (the "Motion"). Nationwide Life Insurance Company ("Nationwide"), an undersecured creditor, filed its Motion on January 8, 1992. The Debtor filed a timely response to the Motion on February 10, 1992.

At a preliminary hearing held on February 24, 1992, the Court scheduled a final hearing for March 6, 1992, to determine the narrow issue of whether or not the Debtor has a reasonable prospect of reorganization within a reasonable amount of time as required by 11 U.S.C. § 362(d)(2)(B). At the final hearing, the Debtor submitted, as an offer of proof, its Amended Plan of Reorganization (the "Plan"). The Court requested briefs from the parties on the limited question of the confirmability of the Debtor's Plan. For the reasons set forth below, the Court finds that the Plan is not confirmable.

### II. FACTS

The undisputed facts of this case follow.[1] Thomas H. Niles ("Niles") and David C. Keating ("Keating") are the Trustees of the Channel Realty Trust (the "Trust"), a Massachusetts nominee trust. The Trust holds legal title to property located at 303 Congress Street in Boston (the "Property"). The Debtor is a limited partnership with two general partners, two special limited partners and 14 limited partners. Niles and Keating are the general partners.

---

1. The facts were presented to the Court in Nationwide's Motion to Dismiss or for Relief from the Automatic Stay, and subsequent admissions in the Debtor's Response.

The Debtor is the sole beneficiary of the Trust.

On November 25, 1986, Nationwide made a loan to the Trust in the principal amount of $12 million. The loan is evidenced by a promissory note (the "Note"), repayment of which is secured by a mortgage and security agreement encumbering the Property, and an assignment of leases and rents. The Note is nonrecourse to the Trustees.

The Note required the Trust to make monthly interest payments of $85,000. According to the terms of the original Note, the entire unpaid principal balance, as well as accrued and unpaid interest, were to be paid on November 25, 1991. The Trust failed to make the November 10, 1990 interest payment. Nationwide eventually made demand for immediate payment of the outstanding balance of $12,240,833.31, comprised of $12 million unpaid principal, $232,333.31 accrued and unpaid interest, and a late charge of $8,500.

On February 14, 1991, Nationwide and the Trustees entered into a Forbearance Agreement in which the Trust acknowledged its prior defaults, and Nationwide agreed to forebear from foreclosing until August 15, 1991. Subsequently, the parties entered into a Forbearance Extension Agreement, pursuant to which the parties agreed 1) to extend the forbearance period to December 15, 1991; and 2) that during the balance of the forbearance period interest would continue to accrue but would not be payable until the end of the extended forbearance period.

On December 13, 1991, the Debtor filed its Chapter 11 petition. In addition to Nationwide, the Debtor listed on its schedules five unsecured creditors, including the City of Boston with a tax claim in the amount of $185,000, and four other creditors whose claims total $12,467.60. The Debtor's sole asset is its beneficial interest in the Trust. The Trust's sole asset is the Property, with a value of not more than $8 million. The Debtor admits that the Trust owns the Property, and the Trust has no equity in the Property.

## III. SUMMARY OF THE PLAN

The Debtor filed its Plan on March 6, 1992. The Plan creates three classes of claims: Class I consists of Nationwide's admittedly impaired claim against the Property, which the Debtor treats as allowed in the amount of $12 million; Class II consists of all general unsecured creditors; and Class III consists of the holders of beneficial interests in the Trust. The Debtor treats administrative expenses and the tax claim of the City of Boston as separate, unclassified claims. The Plan contemplates that the Debtor will pay pre-petition real estate taxes due to the City of Boston in the approximate amount of $185,000 from net cash flow of the Property at the rate of $10,000 per month.[2]

The Debtor proposes to pay Nationwide its $12 million claim in full. Specifically, under the Plan, the Debtor proposes to make monthly payments of interest to Nationwide based upon the Property's present value of $8 million with interest payable at a fixed rate of 8.5% per annum. Within nineteen (19) months of the effective date, once the Debtor has paid the pre-petition taxes to the City of Boston, the excess net cash flow will then be paid to Nationwide to reduce the principal amount due. At the end of a five year period from the effective date of the Plan, the Debtor expects to have obtained refinancing on the Property and will pay to Nationwide the then remaining balance of the $12 million Note.

Class II, consisting of general unsecured claims, is impaired. It is to receive a 90% dividend on the effective date of the Plan. Niles Company, one of the Class II unsecured creditors and an insider of the Debtor, has agreed to waive any claim under the Plan.

The Class III beneficial interests are not impaired under the Plan. The general partners of the Debtor, Niles and Keating, will retain their general partnership interests in the Debtor in the percentages that existed on the date the bankruptcy case commenced.

---

**2.** The Court has difficulty understanding how this is a claim against the Debtor since it is a tax claim relating to the Property, title to which is held by the Trust, not the Debtor.

## IV. DISCUSSION

 The Debtor's proposed Plan of Reorganization is predicated upon two assumptions: 1) that the limited partnership is liable for Nationwide's secured debt; and 2) that it can treat Nationwide's claim as fully secured. Both assumptions are wrong.

With respect to the first of these assumptions, if the Debtor's assets and liabilities are scrutinized, it is clear that the only asset of the limited partnership is the beneficial interest in the Trust. This interest is an intangible one of questionable worth since there is no equity in the real estate that is subject to Nationwide's mortgage, and that property is not property of the estate.

Likewise, when the liabilities are examined, the Debtor's actual liabilities are far less clear than what is set forth in the schedules and Plan. With respect to Nationwide's secured debt, the Debtor has failed to demonstrate how Nationwide has recourse against it for Nationwide's multimillion dollar claim. Clearly, if there is no recourse against the Trustees, there can be no recourse against the limited partnership.[3]

Section 1111(b) of the Bankruptcy Code, which provides that "[a] claim secured by a *lien on property of the estate* shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has recourse," 11 U.S.C. § 1111(b) (emphasis supplied), is unavailing to create a debt where none exists. Nationwide does not have a lien on property of the estate, namely the beneficial interest in the Trust. Consequently, Nationwide's claim, if it has a claim at all against the Debtor, would be limited to the same extent as its claim against the Trust as set forth in the loan documents vis a vis the Trustees, clearly a de minimis amount relative to the mortgage debt. Accordingly, the Court finds that the structure of the Debtor's assets and liabilities cannot support a confirmable plan of reorganization.

 Turning to the second assumption, the Court observes that a discussion of it is only relevant in the event the Court's ruling as to the Debtor's liability for Nationwide's secured claim is erroneous. Nevertheless, the Court will consider Nationwide's two arguments in support of its assertion that the Debtor's Plan is not confirmable: 1) the Debtor cannot and will not be able to obtain the assent of an impaired class of creditors; and 2) the Plan violates the so-called Absolute Priority Rule codified at 11 U.S.C. § 1129. Since the parties focus their arguments on the Debtor's treatment of Nationwide's secured claim, the Court notes that its ruling in *In re Cantonwood Associates Ltd. Partnership*, 138 B.R. 648 (Bankr.D.Mass.1992), *citing In re Greystone III Joint Venture*, 948 F.2d 134 (5th Cir.1991) (as amended), resolves the first of Nationwide's arguments in Nationwide's favor. *See also In re Bryson Properties XVIII*, 961 F.2d 496, 22 Bankr.Ct.Dec. 1391 (4th Cir.1992). *But see In re Bjolmes Realty Trust*, 134 B.R. 1000 (Bankr.D.Mass.1991) (where this court (Queenan, J.) held that a plan could properly place the unsecured portion of a mortgagee's claim in a class separate from that of unsecured trade debt based upon the undersecured creditor's right to make a section 1111(b) election). The Court, therefore, need not address the Absolute Priority Rule.

Nationwide asserts that it has a secured claim in the amount of $8 million, the admitted value of the Property, and an unsecured deficiency claim in the amount of $4 million, the difference between the amount due on the Note and the value of the Property, pursuant to 11 U.S.C. § 506.[4] Nation-

---

**3.** Nationwide may have recourse against the Trustees, pursuant to the terms of the Promissory Note dated November 25, 1986, for real estate taxes and assessments against the Property paid by Nationwide and any liabilities incurred by Nationwide to the tenants due to the Trustees' defaults under any leases. The Court expresses no opinion as to whether there would be recourse to the Debtor as beneficiary of the Trust for any of these liabilities. In view of the magnitude of the nonrecourse debt, the Court does not consider this potential liability of the Debtor to Nationwide for what is admitted to be a very limited exception to the nonrecourse nature of the note determinative of its ultimate holding as to the Debtor's ability to reorganize.

**4.** Section 506 provides:

wide further asserts that, because it has not made an election pursuant to section 1111(b)(2) of the Bankruptcy Code to have its entire claim treated as a secured claim, 11 U.S.C. § 1111(b)(2), the Debtor's Plan must recognize the bifurcation of Nationwide's claim pursuant to section 506(a) and must classify Nationwide's secured and unsecured claims separately. Citing *In re Greystone III Joint Venture*, 948 F.2d 134 (5th Cir.1991) (as amended), and *In re Pine Lake Village Apartment Co.*, 19 B.R. 819 (Bankr.S.D.N.Y.1982), *reh'g denied*, 21 B.R. 478 (Bankr.S.D.N.Y.1982), Nationwide insists that its unsecured deficiency claim for $4 million must be classified along with the Debtor's unsecured trade debts, which total $12,467.60, to comply with section 1122.[5] If this is done, Nationwide concludes that the Debtor will be unable to obtain the vote of an impaired class of creditors. Nationwide states that it will vote to reject any plan of reorganization that does not give it immediate possession of the Property. Since Nationwide will control more than two-thirds of the amount of each impaired class, it will control the outcome of the vote for each class. 11 U.S.C. § 1126(c). As a result, Nationwide urges this Court to find that no plan the Debtor could conceivably propose is or will be confirmable.

In its proposed Plan, the Debtor appears to make a section 1111(b)(2) election for Nationwide with the result being that Nationwide has a single claim in the amount of $12 million. This done, the Debtor argues that the Plan is confirmable notwithstanding Nationwide's anticipated rejection, because Nationwide, as the holder of a secured claim, will retain a lien securing its claim, 11 U.S.C. § 1129(b)(2)(A)(i)(I), and will receive deferred cash payments total-ling at least the amount of the claim. 11 U.S.C. § 1129(b)(2)(A)(i)(II).

The Debtor's reasoning is flawed, however. A debtor who is proposing a plan cannot on its own initiative make the section 1111(b)(2) election and place an undersecured creditor into a single secured class.

Federal Rule of Bankruptcy Procedure 3014 provides:

> An election of application of § 1111(b)(2) of the Code *by a class of secured creditors* in a chapter 9 or 11 case may be made at any time prior to the conclusion of the hearing on the disclosure statement or within such later time as the court may fix. The election shall be in writing and signed unless made at the hearing on the disclosure statement. The election, if made by the majorities required by § 1111(b)(1)(A)(i), shall be binding on all members of the class with respect to the plan.

(emphasis added). This rule provides that the section 1111(b)(2) election is to be an election "by a class of secured creditors" and not an election by the debtor. The requirements that the election shall be in writing and signed provide further evidence that the creditor is to make the election, after fully evaluating its options. Nationwide, assuming for the moment that it is in fact a secured creditor of the Debtor, should have "the sole power to determine application of § 1111(b)." *See* 5 L. King *Collier on Bankruptcy* ¶ 1111.02[5] (15th ed. 1992). *See also In re Elijah*, 41 B.R. 348, 351 (Bankr.W.D.Mo.1984) (purpose of election is to avoid splitting of undersecured claim into secured and unsecured and to prevent debtor from depriving creditor of benefit of appreciation of asset over

---

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. 11 U.S.C. § 506.

5. Section 1122 provides:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience. 11 U.S.C. § 1122.

time). This stated purpose would be meaningless if debtors, not creditors, had the power to make the election. Thus, under the principles set forth in *Greystone, supra,* and *Cantonwood, supra,* the Debtor would have to recognize Nationwide's deficiency claim and classify that claim with other unsecured debts.

Because the Debtor's assumptions relative to 1) its liability to Nationwide, and 2) assuming that liability to Nationwide exists, its ability to place Nationwide's undersecured claim into a single, secured class are incorrect, the Debtor's Plan as proposed is unconfirmable. Moreover, there is no reasonable likelihood of a reorganization within a reasonable amount of time. *See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Accordingly, the Court hereby allows Nationwide's Motion to Dismiss and for Relief from the Automatic Stay.

The foregoing constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.