**In the Matter of COVENTRY COMMONS ASSOCIATES, Debtor.**

Bankruptcy No. 92–07585.
No. 92–CV–76192–DT.

United States District Court,
E.D. Michigan, S.D.

May 17, 1993.

Douglas Roche, William Burgess, Michael Hammer, Detroit, MI, for Travelers Inc. Co.

Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, Madlyn B. Gleich, New York City, for Travelers.

John Murray, Oak Brook, IL, for Travelers Companies.

Barbara Rom, Vicki R. Harding, Detroit, MI, for Coventry Common Associates.

### CORRECTED OPINION

DUGGAN, District Judge.

Currently before the Court is Travelers Insurance Company's (hereinafter "Travelers") Motion for Rehearing. Travelers seeks to have this Court reverse its Order, entered February 19, 1993, which affirmed Bankruptcy Judge Rhodes' confirmation of Coventry Common's second amended plan of reorganization. For the following reasons, Travelers' motion shall be granted.

### Facts

Coventry Commons, formerly known as the Nelson/Ross Partnership, is the owner

of a retail shopping center located in Canton Township, Michigan ("the property"). The property and the income generated thereby are Coventry Commons' sole assets. On February 4, 1988, Coventry Commons executed a Mortgage Note in favor of Travelers in the original principal amount of $9,600,000.00.

To secure repayment of the loan evidenced by the note, Coventry Commons executed a Mortgage and Security Agreement granting to Travelers a first lien upon the property and related fixtures and personal property, and an Assignment of Rents and Leases (the "Assignment of Rents") granting to Travelers an assignment of and security interest in all rents and income generated by the property. To perfect Travelers' mortgage lien and security interest in the rents, the Mortgage and Assignment of Rents were recorded on February 5, 1988 with the Register of Deeds of Wayne County, Michigan and a Fixture Filing and Financing Statement was filed with the Michigan Secretary of State and recorded with the Register of Deeds.

During 1991, Coventry Commons became delinquent in the payment of installments due under the Note. Additionally, the debtor failed to pay real property taxes assessed against the property. On June 12, 1991, Travelers notified Coventry Commons of its default under the Note and Mortgage and accelerated all amounts due thereunder.

On July 2, 1991 (the "petition date"), Coventry Commons filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the petition date, Coventry Commons has continued in possession of the property pursuant to §§ 1107 and 1108 of the Code. As of the petition date, Coventry Commons owed Travelers approximately $9,774,933.42.

On August 1, 1991, debtor filed a motion for (a) determination of status of rents and (b) use of cash collateral on an interim and final basis ("the rents motion"). On September 25, 1991, the bankruptcy court conducted an evidentiary hearing on the rents motion at which time it ruled from the

bench and subsequently entered an order regarding debtor's rents motion. The bankruptcy court concluded that:

1. by reason of its failure to record a notice of default and serve the same upon the tenants of the property, Travelers has an inchoate interest in the Debtor's present right to receive future rents;

2. the rents are not cash collateral;

3. the Debtor must maintain and preserve the property; and

4. the Debtor is authorized to use excess rents for any purpose permitted under the Code.

On October 30, 1991, Travelers filed a Notice of Appeal from the Rents Order. On April 14, 1992, this Court issued an Order Remanding Case to Bankruptcy Court and an Opinion which reversed the Rents Order in part and ruled:

1. Travelers has a perfected present security interest in the rents;

2. Travelers has a postpetition lien on the rents under Section 552(b) of the Code; and

3. the rents are Travelers' cash collateral.

Meanwhile, on October 29, 1991, the debtor filed its Disclosure Statement and Plan of Reorganization. Once the disclosure statement was approved, Travelers filed its objections to the debtor's plan of reorganization on April 17, 1992. In response to Travelers' objections, the debtor filed its modifications to the debtor's plan of reorganization ("the plan").

In the plan, Travelers is treated as having a fully secured claim in the amount of $9,258,743.00. The debtor estimates that the current fair market value of the property is $8,100,000. Thus, Travelers appears to be undersecured by approximately $1,150,000, even though the plan treats Travelers as "fully secured." The plan provides for the payment to Travelers of $400,000.00 from the accumulated excess rents on the effective date of the plan and payment of the remaining balance of Travelers' claim ($8,858,743.00) in equal monthly installments (calculated on a 30 year

amortization schedule) over seven years, with interest accruing at the rate of 8.5% per annum and all amounts due and payable at the expiration of seven years. To evidence the repayment terms of Travelers' claim, the plan provides for the issuance of a new promissory note that can be assumed by a third party without the consent of Travelers.

In the plan, debtor projected that as of June 1, 1992, it would hold approximately $622,305.00 in excess accumulated rents, from which the debtor proposes to pay $400,000.00 to Travelers. The debtor intends to use the remaining $222,305.00 in excess rents to pay its professionals and other junior and unsecured creditors. On May 27, 1992, Travelers filed its Objections to the Confirmation of the Debtor's Plan of Reorganization as Modified.

On June 18 and June 23, 1992, the bankruptcy court conducted an evidentiary hearing to consider confirmation of the plan. On September 16, 1992 the bankruptcy court indicated that it would confirm the plan if the debtor would amend the plan to provide Travelers with a post-confirmation lien on the rents. The debtor amended its plan accordingly and on October 19, 1992, the bankruptcy court held another confirmation hearing at which time it entered the Order Confirming Plan of Reorganization.

On October 20, 1992, Travelers filed a Notice of Appeal from the Confirmation Order and a Motion for Stay Pending appeal. On October 22, 1992, the bankruptcy court entered an Order Granting the Stay Motion, in which it stayed the Confirmation Order pending the exhaustion of this appeal. On February 19, 1993, this Court issued an Opinion and Order affirming the bankruptcy court's confirmation order.

1. Travelers submitted a forty-nine page brief in support of their appeal of the bankruptcy judge's confirmation of debtor's plan of reorganization. Travelers devoted one foot-note to the issue now argued in Travelers' motion for reconsideration. Coventry Commons claims that this issue was not "significantly raised" in Travelers' brief on appeal and that, accordingly, this Court has the right to refuse to consider the argument on a motion for reconsideration.

### Standard of Review

■ Federal Rule of Bankruptcy Procedure 8015, which governs motions for rehearing, is silent as to the appropriate standards for granting such relief. However, Rule 8015 was derived from Federal Rule of Appellate Procedure 40, which provides in part:

> The petition shall state with particularity the points of law or fact which in the opinion of the petitioner the court has overlooked or misapprehended.

. . . . .

In addition, Eastern District of Michigan Local Rule 7.1(h) sets forth the grounds for motions for rehearing or reconsideration and provides, in pertinent part, that:

> The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

Travelers argues that one of the issues that "Travelers brought before this Court on appeal" was the following:

> the classification of the secured and unsecured portions of Travelers' claim in one class of claims, in the absence of an election by Travelers under § 1111(b)(2), violates §§ 506(a) and 1111(b) of the Code and the Bankruptcy [Court] should have denied confirmation for that reason.

(Travelers' Motion for Reconsideration, at 5). Travelers argues that this Court "overlooked or misapprehended" this issue in connection with their appeal.[1]

### Discussion

Title 11 U.S.C. § 1129 provides, in pertinent part:

While this Court does not condone Travelers' method of proceeding with respect to the § 1111(b) issue, research has failed to reveal support for the proposition that, where an issue was *mentioned* in a brief, this Court may refuse to consider the argument on a motion for reconsideration. Therefore, this Court will consider Travelers' argument.

(a) The court shall confirm a plan *only if* all of the following requirements are met:

(1) The plan complies with the applicable provisions of this chapter.

(2) The proponent of the plan complies with the applicable provisions of this chapter.

(emphasis added).

Thus, a plan is non-confirmable if it fails to comply with an applicable provision of chapter 11.

Title 11 U.S.C. § 1111 provides:

(b)(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—

(i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or

(ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.

(B) A class of claims may not elect application of paragraph (2) of this subsection if—

(i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value; or

(ii) the holder of a claim of such class has recourse against the debtor on account of such claim and such property is sold under section 363 of this title or is to be sold under the plan.

(2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

Travelers argues that the bankruptcy court treated Travelers' claim as fully secured even though Travelers did not make the "section 1111(b) election" and even though Travelers has a claim against debtor in an aggregate approximate amount of $9.25 million which is secured by collateral with a value of approximately $8.1 million. Travelers contends that, under section 506(a)[2] of the Bankruptcy Code, Travelers has a secured claim against the debtor in an amount equal to $8.1 million, and an unsecured claim in an amount equal to $1.15 million. (Travelers' Mem. of Law, at 6).

It is undisputed in the case at hand that the value of Travelers collateral is approximately $8 million, and it is likewise undisputed that Travelers has a claim against debtor in an aggregate approximate amount of $9.25 million.

■ The choice of whether a secured claim will be treated as fully secured under section 1111(b)(2) belongs solely to the creditor.

As the plain words of Section 1111(b) suggest, the choice of whether a secured claim will be treated as fully secured or split into secured and unsecured components belongs entirely to the creditor. *In re 266 Washington Associates*, 141 B.R. 275, 285 (Bankr.E.D.N.Y.), *aff'd* 147 B.R. 827 (E.D.N.Y.1992). *See also In re Channel Realty Associates Limited Partnership*, 142 B.R. 597 (Bankr.D.Mass.1992) (because lender did not make election pursuant to section 1111(b)(2), debtor was required to recognize bifurcation of lender's secured and unsecured claims); *In re B & B West 164 Street Corp.*, 147 B.R. 832 (Bankr.E.D.N.Y.1992) (debtor's plan that made election to treat lender's claims as fully secured violated section 1111(b) because choice to be treated as fully secured belongs only to the lender).

Rule 3014 of the Federal Rules of Bankruptcy Procedure requires that in order for

---

**2.** Title 11 U.S.C. § 506(a) provides, in part:
An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the

estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

Travelers to make the election under section 1111(b)(2) to be treated as a fully secured creditor, such election must be made (i) prior to conclusion of the hearing on the debtor's disclosure statement, and (ii) in writing and signed, unless made at the hearing on the disclosure statement. Fed. R.Bankr.P. 3014. At no time did Travelers make any such election.

■ Despite the fact that Travelers never made the section 1111(b)(2) election to have its $9.25 million undersecured claim be treated as a fully secured claim, the debtor's second amended plan of reorganization places Travelers' $8.1 million secured claim and its $1.15 million unsecured deficiency claim together in Class 3. Thus, Travelers argues that debtor's plan wrongfully treats Travelers' undersecured claim as fully secured. Travelers argues that this treatment of Travelers' claim violates 11 U.S.C. § 1111(b). Accordingly, Travelers contends that the debtor's plan is non-confirmable under 11 U.S.C. §§ 1129(a)(1) and 1129(a)(2).

Coventry Commons argues that application of the following statutory scheme shows that the 1111(b) election was not forced upon Travelers. Section 1129(a)(7)(B) provides:

> (7) with respect to each impaired class of claims or interests—.... (B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

Section 1129(b)(1) of the Bankruptcy Code allows a "cramdown" over a dissenting impaired class "if the plan does not discriminate unfairly, and is fair and equitable." Section 1129(b)(2) defines "fair and equitable":

> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements: (A) with respect to a class of secured claims, the

plan provides—(i)(I) that the holders of such claims *retain the liens* securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the allowed amount of such claims; and (II) that each holder of a claim of such class receive on account of such claim *deferred cash payments* totalling at least the allowed amount of such claim, of a value, as of the effective date of the plan, *of at least the value of such holder's interest in the estate's interest in such property.* (emphasis added).

■ Coventry Commons argues that this Chapter 11 statutory framework leads to the following result if the lender makes the 1111(b)(2) election: (1) the entire allowed claim, which is the full amount of indebtedness, is secured despite the value of the collateral; (2) the full indebtedness will remain as a lien against the property; (3) the lender must receive deferred cash payments that (a) total the full indebtedness and (b) have a present value equal to the value of the collateral. (Appellee's Response, at 5).

The legislative history of section 1111(b)(2) lends support to Coventry Commons' position:

> If section 1111(b)(2) applies then the "electing" class is entitled to have the entire allowed amount of the debt related to such property secured by a lien even if the value of the collateral is less than the amount of the debt. In addition, the plan must provide for the holder to receive, on account of the allowed secured claims, payments, either present or deferred, of a principal face amount equal to the amount of the debt and of a present value equal to the value of the collateral.

Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary. Cong. Record S 1721.

Thus, had Travelers made the section 1111(b)(2) election, debtor would have been required to make a stream of deferred principal payments totalling $9,250,000 but with a present value of only $8.1 million (the value of the collateral). Debtor's plan instead provides that debtor shall make a

stream of deferred principal payments totalling $9,250,000 with a present value of $9,250,000. Debtor contends that its original plan of reorganization provided Travelers with the option to select the 1111(b)(2) election at an interest rate of 5.22%. (Appellee's Response, at 6). This interest rate would have been used to achieve a present value of $8.1 million when the stream of principal face payments total $9,250,000.

However, because Travelers did not select the 1111(b)(2)˙ election, debtor's plan provides for payment of a stream of deferred principal payments totalling $9,250,000 at a market rate of interest of 8.5% in order to ensure that Travelers receives the present value of $9,250,000. (Appellee's Response, at 6).

Coventry Commons argues:

> For precisely the reason that such an election cannot be foisted upon a lender, the Debtor was forced to pay Travelers' claim in full of $9,250,000 plus a full market rate of interest of 8.5% on the total indebtedness even though the property was only worth $8.1 million.
>
> To put it in concrete terms, the Debtor would pay $786,250 interest annually on debt of $9,250,000 at 8.5% and would only pay $482,850 interest annually on debtor of $9,250,000 at 5.22%. Again, this is the difference that makes all the difference. Travelers cannot be paid a market rate of interest and seriously maintain the argument that the result of an 1111(b) election was forced upon it. It would be receiving $300,000 less interest annually if that was true.

(Appellee's Response, at 7).

Coventry Commons' argument is unpersuasive. Section 1129(b)(2) provides that a holder of a secured claim must receive deferred cash payments totalling *at least* the value of the collateral. The fact that the debtor's plan of reorganization places Travelers in a better position than that *required* when a creditor makes a section 1111(b) election does not change the fact that Trav-

elers was treated as if it had made the 1111(b) election. For the following reasons, the fact that Travelers was treated as fully secured even though Travelers is an undersecured creditor is determinative on this issue.

■ Unless a creditor makes the section 1111(b) election, it is entitled to have its secured claim and its unsecured claim separately classified. Title 11 U.S.C. § 506(a) provides, in part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

The relationship between 11 U.S.C. §§ 506(a) and 1111(b) is as follows:

> An undersecured creditor, a creditor whose security is worth less than the total amount owed to the creditor, may choose to have its claim treated in two manners. First, it can have a bifurcated claim, with a secured claim to the extent of the value of the collateral, and an unsecured claim for the remainder of the debt owed. 11 U.S.C. § 506(a). Second, the secured creditor can waive its unsecured claim and elect to have its total claim treated as secured. 11 U.S.C. § 1111(b)(2).

*In re Griffiths,* 27 B.R. 873, 875 (Bankr. D.Kan.1983) (citation omitted).

Because debtor's plan treats Travelers' claim as fully secured, even though Travelers is an undersecured creditor, the plan treats Travelers as if Travelers had made the section 1111(b)(2) election; otherwise, Travelers' claims would have been split up into secured and unsecured claims under section 506(a). *See In re Channel Realty Associates Limited Partnership,* 142 B.R. 597 (Bankr.D.Mass.1992).[3]

---

**3.** "In its proposed Plan, the Debtor appears to make a section 1111(b)(2) election for Nationwide with the result being that Nationwide has a single claim in the amount of $12 million. This

done, the Debtor argues that the Plan is confirmable notwithstanding Nationwide's anticipated rejection, because Nationwide, as the holder of a secured claim, will retain a lien

In *In re 266 Washington Associates*, 141 B.R. 275 (Bkrtcy.E.D.N.Y.1992), the bankruptcy court was faced with a plan of reorganization much like that at hand.

Apparently recognizing that it cannot classify Citibank's unsecured deficiency claim and the other unsecured claims in separate unsecured creditor classes, the Debtor in the Amended Plan bunches the entire Citibank claim and would force Citibank to accept treatment as a fully secured creditor. While this proposed treatment may at first appear magnanimous on the Debtor's part it is, in fact, in direct violation of 11 U.S.C. §§ 506(a) and 1111(b).

As pointed out above, Section 506(a) entitles a secured creditor to an unsecured claim to the extent the claim is undersecured. Section 1111(b) expressly gives a class of secured creditors the right to elect whether their claims should be treated as fully secured or as secured claims to the extent of the value of the collateral and as unsecured claims for the deficiency. As the plain words of Section 1111(b) suggest, the choice of whether a secured claim will be treated as fully secured or split into secured and unsecured components belongs entirely to the creditor. The choices available to a secured creditor under Section 1111(b) surely include a statutory option to employ an unsecured deficiency claim to have a significant voice in, and if its claim is large enough, dominate the unsecured class so that it can avoid the genre of tactical classification of claim schemes being used in this case to silence Citibank.

*Id.* at 285.

Coventry Commons has explained its reason for placing Travelers' unsecured and secured claims together in Class 3:

securing its claim, 11 U.S.C. § 1129(b)(2)(A)(i)(I), and will receive deferred cash payments totalling at least the amount of the claim. 11 U.S.C. § 1129(b)(2)(A)(i)(II).

The Debtor's reasoning is flawed, however, A debtor who is proposing a plan cannot on its own initiative make the section 1111(b)(2) election and place an undersecured creditor into a single secured class." 142 B.R. at 600.

Travelers filed a proof of claim that stated its claim was a totally secured claim. Taking that position into account and the fact that the Confirmed Plan provided for repayment in full of Travelers' total claim, plus a mortgage on the property and a lien on the rents, plus a market rate of interest, the Debtor considered it appropriate to deem Travelers' claim secured and designate one new secured note, one payment schedule, one mortgage, and one lien on the rents. This made more sense than dividing the note, the mortgage and the lien between two classes for Travelers. These terms were all set forth in the Class 3 treatment for Travelers. Apparently, Judge Rhodes felt that even though the treatment for the secured and unsecured claims of Travelers were treated identically, technically they should not be classified together. Nevertheless, he found no harm was done.[4]

As in *266 Washington Associates*, the debtor's proposed treatment of Travelers' claim is understandable. However, because the debtor's plan of reorganization places Travelers' secured and unsecured claims together in Class 3, Travelers is effectively treated as having a fully secured claim and is therefore deprived of whatever strategic value accompanies its unsecured claim. Travelers alone has the right to choose whether its claim shall be treated as fully secured or split into secured and unsecured components. Debtor's second amended plan of reorganization violates 11 U.S.C. § 506(a) and 11 U.S.C. § 1111(b); therefore, the plan is non-confirmable under 11 U.S.C. §§ 1129(a)(1) and 1129(a)(2).

 Coventry Commons emphasizes the bankruptcy court's point that, even

---

4. "Technically, the debtor's plan violates the requirement in § 1122(a) that only similar claims can be classified together. This plan classifies Travelers' secured and unsecured claims in the same class, and treats them identically. However, because Travelers' unsecured claim will be paid in full with interest, the Court concludes that this technical violation creates no actual prejudice to Travelers' substantive rights." Supplemental Opinion by Judge Rhodes dated December 8, 1992.

though the debtor's plan technically violates the requirement in § 1122(a) that only similar claims can be classified together, no prejudice resulted from the violation. (Appellee's Response, at 8). Coventry Commons contends that the fair and equitable test of Section 1129(b) has been met for both the secured claim and the unsecured claim of Travelers due to the payment of $9,250,000 plus a market rate of interest. Coventry Commons further argues that, even had Travelers' unsecured claim been classified separately from its secured claim into a separate deficiency class of its own, the fair and equitable standards for "cramdown" would have been met according to the bankruptcy court and according to this Court's February 19, 1993 Opinion. (Appellee's Response, at 8).

Title 11 U.S.C. § 1129(b)(1) provides *inter alia*, that *if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met* with respect to a plan, the court shall confirm the plan if the plan does not discriminately unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under the plan. Because sections 1129(a)(1) and (a)(2) were not met with respect to this plan, the Court could not confirm a "cramdown" plan. Thus, Coventry Commons' argument is unpersuasive.

Furthermore, because sections 1129(a)(1) and (a)(2) were not met, thus rendering debtor's plan non-confirmable as a matter of law, the Court cannot consider the propriety of a "cramdown" in the present case:

> The Debtor further asserts that there is no issue of improper classification so long as a plan does not unfairly discriminate between classes of similar claims, and the Amended Plan and any other plan the Debtor might propose, the Debtor argues, does not and would not unfairly discriminate between such claims. Whether or not a plan discriminates unfairly is besides [sic] the point at this juncture. The Debtor hopelessly confuses two discrete legal issues by merging them into a seamless web. Unfair discrimination is a cram down issue under 11 U.S.C. § 1129(b)(1). Classification of

claims are 11 U.S.C. §§ 1122 and 1129(a)(10) issues, the propriety of which will determine whether cram down could even be considered by a bankruptcy court.

*In re 266 Washington Associates, supra* at 286.

Accordingly, this Court shall reverse its February 19, 1993 order affirming the bankruptcy court's order confirming debtor's second amended plan of reorganization and shall likewise reverse the bankruptcy court's confirmation of the plan.

An Order consistent with this Opinion shall issue forthwith.