In re TOWN CENTERS DE-
VELOPMENT COMPA-
NY, INC., Debtor.

AMT CADC Venture, LLC,
Plaintiff/Appellant,

v.

Town Centers Development Company,
Inc., Defendant/Appellee.

No. 13–12423.

United States District Court,
E.D. Michigan,
Southern Division.

Signed Aug. 19, 2014.

David J. Nowaczewski, Bodman, Detroit, MI, James J. Vlasic, Bodman, Troy, MI, for Plaintiff/Appellant.

Robert N. Bassel, Clinton, MI, for Defendant/Appellee.

## ORDER

JULIAN ABELE COOK, JR., District Judge.

This is an appeal of a decision by the United States Bankruptcy Court for the Eastern District of Michigan which arose from a dispute between the Appellee, Town Centers Development Company, Inc. ("Town Centers"), and the Appellant, AmT CADC Venture, LLC ("AmT"), over the treatment of AmT's assets under Town Centers' Chapter 11 bankruptcy plan. The specific issues under scrutiny here are twofold; namely, (1) if AmT is eligible for protection under 11 U.S.C. § 1111(b), and (2) whether AmT filed its § 1111(b) election in a timely manner.

It should be noted here that the bankruptcy court rejected AmT's election effort because this petitioner had failed to satisfy the standards of § 1111(b) within the obligatory deadline. An appeal by AmT followed.

## I.

Town Centers is a Michigan company which consisted of 107 undeveloped land sites, 17 developed living/workspace units, and 5 acres of undeveloped land in Shelby Township, Michigan. (Record for Appeal 36, First Plan, ECF No. 8). On June 20, 2003, Town Centers executed a mortgage as well as an assignment of rents on the 107 undeveloped sites and the 17 live/work units in favor of the Ohio Savings Bank. (Record for Appeal 151–54, Objection to Confirmation, ECF No. 8).[1]

---

1. On April 23, 2007, the Ohio Savings Bank experienced an official change of its name to AmTrust Bank which currently maintains a lien on Town Centers' properties. (Record for Appeal 26, First Plan, ECF No. 8).

On January 19, 2012, Town Centers filed for relief under Chapter 11 of the United States Bankruptcy Code. (Record for Appeal 36, First Plan, ECF No. 8). Several months later (April 18, 2012), Town Centers filed its first of four Chapter 11 reorganization plans, which treated AmT's properties as a part of a secured class.[2] (*Id.* at 19, 53). Under this plan (the "First Plan"), AmT's secured claims were valued at $1,500,000. (*Id.* at 26). Town Centers proposed to pay AmT $6,110.92 each month for a period of over 300 months at four percent interest until the balance was paid in full, with a ten-year balloon. (*Id.*). These payments would be financed by (1) the sale of the 17 live/work units at an amount not less than $60,000 per unit, and (2) the sale of the undeveloped sites at not less than $5,000 per lot. (*Id.*). Upon the completion of each sale, AmT's individual lien on that piece of property would be released. (*Id.*).

On May 29, 2012, Town Centers filed an amended plan (the "Second Plan"), which treated AmT's collateral under identical terms as the first. (Record for Appeal 61, Second Plan, ECF No. 8). The Third Plan, filed on June 22, 2012, calculated the repayment amounts to AmT in the same manner. (Record for Appeal 109, Third Plan, ECF No. 8). Following this filing, the bankruptcy court scheduled confirmation hearings for the Third Plan which were later adjourned at the request of Town Centers.

On December 3, 2012, Town Centers filed its Fourth Plan, which deviates from its original treatment of AmT's claims in a significant way. (Record for Appeal 169, Fourth Plan, ECF No. 8). Town Centers retained the proposal to sell the undeveloped sites, but eliminated the sale of the 17 live/work units from the plan. (*Id.* at 176). With this reorganization, the total value of AmT's secured assets was reduced to $1,200,000 with a higher interest rate of 6.75% and a monthly payment of $6,356.26. (*Id.*). As a result, the balance on AmT's unsecured claims was increased to cover the value of the rental units. (*Id.* at 177).

On December 7, 2012, seven days prior to the confirmation hearing, AmT filed lengthy and detailed objections to Town Centers' Fourth Plan. (Record for Appeal 246, AmT's Dec. 7, 2012 Objections, ECF No. 8). These objections, while addressing the proposed changes in repayment terms and claim values, did not address the proposals by Town Center relating to a § 1111(b) election.[3] (*Id.* at 250).

On December 14, 2012—the morning of the confirmation hearing—Town Centers filed its Fourth Plan projections. During the hearing, Town Centers' principal, Vincent DiLorenzo (Record for Appeal 359, Hearing Transcript 75:17, ECF No. 8) was questioned about the handling of AmT's collateral under the Fourth Plan. (*Id.* at 410, Hearing Transcript 126:3). In response, he replied that Town Centers still planned to sell the undeveloped sites. (*Id.*, Hearing Transcript 126:3–7). However, when questioned about the 17 rental units, DiLorenzo acknowledged that Town Centers would rent rather than sell these units (*Id.* at 411–13, Hearing Transcript 127:13–

---

**2.** A claim is "secured" if there is collateral (real or personal property) attached to the debt. *Black's Law Dictionary* (9th ed. 2009). A secured creditor is "[a person or entity] who has the right, on the debtor's default, to proceed against collateral and apply it to the payment of the debt. UCC § 9–102–(a)(72)." *Id.* at "creditor."

**3.** Briefly, an § 1111(b) election fully secures an undersecured creditor's claim, thereby affording a recourse against the debtor for any deficiency balance (i.e. whatever portion is not covered by the collateral's fair market value). *7 Collier on Bankruptcy* ¶ 1111.02–03 (Alan N. Resnick & Henry J. Sommer, eds. 16th ed.).

129:7–11), and use the proceeds to make the obligatory monthly payments to AmT. (*Id.*, Hearing Transcript 129:3). Despite the proposals within the Fourth Plan and DiLorenzo's testimony, AmT did not raise the § 1111(b) issue during this hearing.

The bankruptcy court continued the confirmation hearing until March 1, 2013. (Record for Appeal 540–41, ECF No. 8). On February 27, 2013,—three days before the March hearing and seventy five days after the confirmation hearing—AmT filed an election under § 1111(b). (Record for Appeal 485–88, AmT's § 1111(b) Election, ECF No. 8).

On March 15, 2013, Town Centers filed its objection to AmT's election, contending that this election effort under § 1111(b) had not been timely submitted according to the local rule, E.D. Mich. LBR 3014–1. (Record for Appeal 497, Town Centers's Memo, ECF No. 8). As a result of these filings, the bankruptcy court deferred the continuation of the confirmation hearing until it could resolve Town Centers' objection. On May 3, 2012, the bankruptcy court issued an order which sustained Town Centers' objection, and, in so doing, it denied AmT's election because it had failed to meet the required deadline as established by E.D. Mich. LBR 3014–1. (Record for Appeal 542, Bench Opinion 10:13–15, ECF No. 8).

On May 17, 2013, AmT moved for leave to appeal the decision by the bankruptcy court, arguing that (1) the election could not have been made timely due to the delayed filing of the Fourth Plan projections, and (2) AmT was entitled to § 1111(b) protection of its secured assets. (Record for Appeal 509, AmT's Motion for Leave to Appeal, ECF No. 8).

## II.

Pursuant to 28 U.S.C. § 158(a)(1), "[t]he district courts of the United States shall have jurisdiction to hear appeals [-] from final judgment, orders, and decrees [ . . . ] of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." This district court is an appropriate forum for such an appeal because it sits within the federal judicial district where the bankruptcy judge serves. *Id.*

■ The conclusion by the bankruptcy court (to wit, AmT's failure to meet the filing deadline precluded it from § 1111(b) protection) is a mixed question of law and fact. "[T]he district court reviews the bankruptcy court's conclusions of law de novo and upholds its findings of fact unless they are clearly erroneous." *In re Made in Detroit, Inc.*, 414 F.3d 576, 580 (6th Cir.2005) (quoting *255 Park Plaza Assocs. Ltd. P'ship v. Conn. Gen. Life Ins. Co. (In re 255 Park Plaza Assocs. Ltd. P'ship)*, 100 F.3d 1214, 1216 (6th Cir.1996)). Moreover, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988).

## III.

Chapter 11 of the United States Bankruptcy Code provides relief for a debtor seeking to salvage its business or corporation through reorganization. 11 U.S.C. § 101, *et seq.; see also In re Lake in the Woods*, 10 B.R. 338, 340 (E.D.Mich.1981). Through this Chapter 11 process, a debtor is encouraged to restructure its finances in order to repay the creditors, and, thus, avoid the liquidation of its enterprise. *Id.* This can be accomplished through a reorganization plan. 11 U.S.C. § 1123. In such a proposal, the debtor is required to outline how (1) its business operations will be maintained, and (2) the secured (lien-holding creditors) and the unsecured (non-lien-holding creditors) will be repaid. 11

U.S.C. § 1123(a)(1)-(4). These debtor repayment proposals are terms that the creditors may accept or reject. 11 U.S.C. § 1126.

■ One of the ways in which an undersecured creditor may maximize the return on its claim is through an § 1111(b) election.[4] 11 U.S.C. § 1111(b)(1)(A). The election gives an undersecured creditor recourse against the debtor and treats the entire claim as secured. *See In re Broad Assocs. Limited Partnership*, 125 B.R. 707, 711 (Bankr.D.Conn.1991). The lien attaches to the entire debt, including the collateralized portion and the unsecured deficiency balance. *In re Coventry Commons Assocs.*, 155 B.R. 446, 451 (E.D.Mich.1993). Simply put, an § 1111(b) election prevents a debtor from "cashing out" an undersecured creditor's claim for solely the value of its collateral. If property values are low during the bankruptcy, the debtor could retain the collateral, pay off the creditor at the property's diminished fair market value, and then sell the collateral for a profit if prices recover.

■ However, a creditor is ineligible for § 1111(b) protection if it already has recourse against the debtor and if the debtor plans to sell the property. In this scenario, a creditor would not need the protections of § 1111(b) because it already has received the benefit of its bargain. *In re H & M Parmely Farms*, 127 B.R. 639, 643 (Bankr.D.S.D.1989) (citing *Colliers*, ¶ 1111.02[4] ). Indeed, at a sale held pursuant to 11 U.S.C. § 363, the creditor could bid between the property's fair market value and the amount of its claim, thereafter apply that sum toward the outstanding balance, resulting in a diminished claim. *Id.* Alternatively, if the property is

to be sold under the plan, then the creditor may protect its rights through the confirmation process. *Id.*

■ If the debtor does not propose to sell the collateral, then the creditor is eligible for § 1111(b) protection; however, the creditor must file the § 1111(b) election in a timely manner. Federal Rule of Bankruptcy Procedure 3014 permits a creditor to file this election at any time prior to the confirmation of the plan. *See In re Elmwood, Inc.*, 182 B.R. 845, 854 (D.Nev.1995) ("State Street never elected § 1111(b) treatment prior to the March 29, 1994, disclosure hearing. Accordingly, its motion was not timely filed under Fed. R. Bankr.P. 3014. This is not altered by the fact that Elmwood filed its modified Plan restating the disclosure statement."); *see also Troy Sav. Bank v. Travelers Motor Inn*, 215 B.R. 485, 492 (N.D.N.Y.1997) ("Rule 3014 clearly specifies that a § 1111(b) election must be made prior to the conclusion of the disclosure hearing. The Appellant neither requested such an election nor did the court fix a later time to make an election."). However, the Eastern District of Michigan's local bankruptcy rule 3014–1 states, "when the court has entered an order requiring a combined plan and disclosure statement, the deadline to file an election under § 1111(b) is 7 days *before* the date of the confirmation hearing." E.D. Mich. LBR 3014–1. Since the local rule supplements rather than conflicts with the federal rule, it applies to those bankruptcy cases filed in the Eastern District of Michigan. Fed. R. Bankr.P. 9029(a)(1).

Here, AmT argues that it could not have obtained protection under § 1111(b) in a timely manner because it was ineligible to

---

**4.** A creditor is "undersecured" when the fair market value of the collateral is less than the amount owing on the secured portion of the

claim. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

do so at the time of the deadline. (AmT's Br. 9–10, ECF No. 11). AmT maintains that it was barred from making the election under the bankruptcy code because (1) Town Center's Fourth Plan contemplated the sale of the undeveloped sites,[5] and (2) the treatment of AmT's liened properties wasn't altered until the morning of the confirmation hearing, seven days after the election deadline. (*Id.*).

The first issue is whether AmT, as a secured recourse creditor, could have elected to garner § 1111(b) protection prior to the filing of Town Centers' Fourth Plan. Under § 1111(b)(1)(B)(ii), a creditor does not qualify for protection if (1) it has recourse against the debtor on the claim, and (2) "such property is sold under section 363 of this title or is to be sold under the plan." Town Centers's first, second, and third plans contemplated. the sale of the 17 rental units and the 107 undeveloped sites. (Record for Appeal, First Plan 42; Second Plan 78; Third Plan 109, ECF No. 8). As such, AmT was precluded from filing a § 1111 election under these plans because the properties securing its claims were to be sold.

■ Under Town Centers' Fourth Plan, on the other hand, AmT could have elected § 1111(b) protection because it no longer contemplated the sale of the 17 rental units. (*Id.*, Fourth Plan 176). Indeed, the plan specifically provides for the sale of "each of the [107] undeveloped sites...." while making no mention of the 17 live/work units. *Id.* Yet, AmT contends that the proposed sale of any of its claimed properties excludes it from § 1111(b) protection. (AmT's Br. 11, ECF No. 11). This understanding, however, is a misinterpretation of the plain language of the statute. Indeed, a creditor is eligible for § 1111(b) protection if it has recourse

against the debtor on "*such* claim and *such* property." The adjective "such" means "of the character, degree, or extent described, referred to, or implied in what has been said." *Oxford English Dictionary* (2d ed. 1989). Therefore, "such" in § 1111(b) separates a creditor's claims into independent units. Here, AmT has two distinct claims—one for 17 rental units and the other for the undeveloped sites. (Record for Appeal, Fourth Plan 176, ECF No. 8). AmT has failed to direct the Court to any authority which would suggest or imply that a creditor is precluded from filing a § 1111(b) election where, as here, the debtor proposes to sell some of the property subject to a creditor's claim while retaining the rest. In other words, the contemplated sale of the undeveloped lots did not preclude AmT from making the election with respect to the 17 rental units.

As for AmT's allegation that it was unable to make a timely election because it did not learn of the change in the collateral's treatment until December 14, 2012, this argument is equally unpersuasive. (AmT's Br. 11, ECF No. 11). Pursuant to E.D. Mich. LBR 3014–1, AmT was required to file its election seven days before the date of the confirmation hearing. The bankruptcy court initially scheduled the confirmation hearing for August 16, 2012 (Record for Appeal, 538, Bench Opinion 4:16–17, ECF No. 8), but it was subsequently adjourned (*Id.* at 4:23) to December 14, 2012, which is the operative date here. (*Id.* at 5:1–2).

■ The bankruptcy court calculated the filing deadline according to the commencement of the confirmation hearing in the following manner:

> The rule is clear and unambiguous in my view and when it says the deadline to

---

5. The Court assumes that AmT's reference to the "current plan" refers to Town Center's

Fourth Plan, which has been described in more detail on pages 3–4 of this Order.

file is seven days before the date of the confirmation hearing, it means the initially scheduled confirmation hearing that actually goes forward and [ ... ] constitutes the commencement of the confirmation hearing process.

(*Id.* at 8:2–7). Although Rule 3014–1 does not define "the date of the confirmation hearing," one may reasonably infer that it is the date on which the hearing commences. E.D. Mich. LBR 3014–1. "When the text of a statute contains an undefined term, that term receives its ordinary and natural meaning." *Ltd. v. Comm'r*, 286 F.3d 324, 332 (6th Cir.2002). A date is "the day when an event happened or will happen." *Black's Law Dictionary* (9th ed. 2009). Therefore, "the date of the confirmation hearing" is the day on which it commences.

This Court finds that AmT's § 1111(b) election is barred because it failed to meet the filing deadline, as required by E.D. Mich. LBR 3014–1. Here, the confirmation hearing commenced on December 14, 2012, which must be "the date of the confirmation hearing" under the local rule. Accordingly, the deadline to file the § 1111(b) election was seven days prior to December 14th. AmT filed the election on February 27, 2013, 73 days after the deadline. (Record for Appeal 485–88, AmT's § 1111(b) Election, ECF No. 8).

AmT sat on its rights under § 1111(b) and cannot now impose its election responsibilities upon Town Centers. Failing to make the election timely, AmT may not now seek to deprive Town Centers of whatever rights it has acquired after the deadline. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

## IV.

For the reasons stated above, the Court affirms the decision by the bankruptcy court to deny AmT's § 1111(b) election as untimely. AmT's interlocutory appeal is thus denied. (ECF No. 11). This case is hereby remanded to the bankruptcy court.

IT IS SO ORDERED.